## HAMPTON v. WOOLSEY et al.

(Court of Civil Appeals of Texas. Galveston. June 21, 1911. Rehearing Denied Oct. 5, 1911.)

1. MASTER AND SERVANT (§ 180*)—INJURIES TO ·SERVANT—"FELLOW SERVANT"—"OPERATING RAILROAD."

A contractor to furnish logs to a sawmill over a logging railroad, to which spurs were connected and on which a log skidder was operated solely to haul logs to a point where they could be loaded on cars and transported to the mill, was a person "operating a railroad" within Sayles' Ann. Civ. St. 1897, art. 4560h, providing that all persons engaged in the common service of a person operating a railroad in the same grade of employment and together doing the same character of work at the same time and place are "fellow servants," and that employés who do not come within such provisions are not fellow servants.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 180.*

For other definitions, see Words and Phrases, vol. 3, pp. 2716–2730; vol. 8, p. 7662; vol. 6, pp. 4989–4992.]

2. MASTER AND SERVANT (§ 181*)—INJURIES TO SERVANT — "FELLOW SERVANT" — RAILROADS.

Defendant operated a steam log skidder, consisting of a flat car, on each end of which were disconnected engines operating separate skidding cables. Plaintiff, who was employed as a decker in the crew attached to one of the cables, was injured by being struck by a log negligently moved by the order of the decker connected with the other cable. *Held*, that plaintiff and such other decker were not engaged at the same piece of work at the time of the injury and, were therefore not "fellow servants" within Sayles' Ann. Civ. St. 1897, art. 4560h.

[Ed. Note.—For other cases, see Master and Servant, Cent.Dig. §§ 369, 370; Dec.Dig. § 181.*]

3. MASTER AND SERVANT (§ 180*)—INJURIES TO SERVANT—"FELLOW SERVANT"—RAILROADS.

Defendant, pursuant to a contract to furnish logs for a mill, used a logging railroad and certain extra spur tracks to which the logs were

---

hauled by means of a steam skidder. Plaintiff and B., by whose negligence plaintiff was injured, were employed to take logs as they were hauled by two disconnected engines and skid cables to the edge of the spur track. Neither plaintiff nor B. had anything to do with the movement of the skidder. Plaintiff was injured by being struck by a log negligently moved by the orders of B. *Held* that, since the employment of both plaintiff and B. had nothing to do with the operation of the railroad, they were "fellow servants," and were not within Sayles' Ann. Civ. St. 1897, art. 4560h, defining fellow servants in the employ of person operating a railroad.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 180.*]

Appeal from District Court, Nacogdoches County; James I. Perkins, Judge.

Action by A. J. Woolsey against J. J. Hampton and another. Judgment for plaintiff against defendant Hampton, and he appeals. Reversed and rendered.

V. E. Middlebrook, Young & Stinchcomb, and T. D. Wynne, for appellant. M. L. Cunningham, for appellee Hayward Lumber Co. Blount & Strong and King & King, for appellee Woolsey.

REESE, J. In this case A. J. Woolsey sues J. J. Hampton and the Hayward Lumber Company to recover damages, laid at $12,970, for personal injuries alleged to have been received by him by reason of the negligence of defendants. A trial with a jury resulted in a verdict and judgment in favor of the lumber company and against J. J. Hampton for $3,000, from which he prosecutes this appeal. There is no appeal on the part of the plaintiff from the judgment in favor of the Hayward Lumber Company, and no further reference need be made as to that branch of the case.

Appellant pleaded general denial, assumed risk, and contributory negligence on the part of the appellee, and further set up specially, by way of answer, that, if appellee was injured by reason of the negligence of any one, it was the negligence of his fellow servant, both in the employment of appellant Hampton, and that there was no liability.

There is little or no dsipute in the evidence as to the material facts. The undisputed evidence establishes the following facts:

The Hayward Lumber Company is a corporation engaged in the manufacture of lumber at Nacogdoches, where its mill is located. J. J. Hampton had a contract with the lumber company to log its mill, by the terms of which Hampton was to cut its timber and deliver the logs to the lumber company on the main line of the Nacogdoches & Southeastern Railway Company, loaded on cars, for a certain price per 1,000 feet. The lumber company furnished appellant with steel rails, and appellant at his own expense constructed spur tracks into the woods from the said railway for the purpose of reach-ing the timber. Appellant kept up the spur tracks and hired and paid all employés engaged in the work. The Hayward Lumber Company, in addition to the rails, furnished appellant with a steam skidder, the use of which will be hereafter explained, and a steam loader. This skidder was somewhat like a flat car, about 40 feet long and 12 or 15 feet wide. It rested on trucks like an ordinary car, except that there were three pairs of trucks under each end. It has two engines, one at each end of the car, which were used for the purpose of operating the machinery for pulling in the logs and could also be used for the purpose of propelling the car and machinery, at a speed of 1½ miles per hour, over the rails. Off from each end of the car was a boom, consisting of two heavy timbers, joined together at the top, and extending upward and outward from the end of the car at an angle of about 30 degrees. On the car is a drum for each arm of the boom for the purpose of operating a wire cable extending up and through a pulley at the top, and wound around the drum. The operation of the machine is as follows: The cable is run through the pulley at top, and thence to the ground, where it is taken by the end, and hitched to a singletree, to be pulled by a horse in charge of a boy, who takes the end of the cable out in the woods to a log. Clamps, called "tongs," attached to the cable, are then fastened to the end of a log, by a man stationed for that purpose, who signals the engineer operating the drum for that cable. The machinery is then put in motion, and the log is pulled into the loading pile, called a "deck," and stopped. The decker, another man, then unfastens the tongs, releases that cable, and attaches another cable, called a "decking cable," which is attached to the log, and by means of which the log is jerked up and thrown on the pile or deck preparatory to be loaded on a car, to be hauled to the place of delivery. Each operator of a drum has one skidding cable, with which the logs are pulled in, one tong setter in the woods whose business is to fasten the skidding cable to the logs, one boy on a horse to carry the cable to the log, and one decker to deck or pile the logs when they come in; that is, to unfasten the skidding cable and fasten the decking cable, by means of which the logs are jerked upon the pile or deck. These cables could reach logs 200 yards from the skidder in the woods, according to the testimony of appellant. Other witnesses place the limit at 300 feet. We do not think this material. The sole business of the skidder was to pull the logs from the woods and place them beside the spur track for loading. It had nothing to do with the operation of hauling the logs over the spur to the railway. It was moved from place to place on the spur track, so as to reach the logs, about 100 yards at a time. The machin-

ery was so arranged that it was propelled slowly by the power furnished by the same engines which operated the drums. When the skidder finished its work on the spur, it was moved onto the railway, or another spur, when necessary to make way for the loading cars, which took off the logs, and which were pulled by a regular engine of a peculiar make called a "shay engine." These two skidding cables at each end were so arranged that they could both be operated from the same side of the track or from different sides. When the skidder got to the place where it was to be used for pulling the logs, it was made fast by guy ropes or cables to trees or stumps, and by other means, to hold it fast just where it was stopped, until it became necessary to move it again.

At the time of the accident to appellee he was in the employment of appellant, working with the skidder as a decker. His duties have been stated. He and those similarly employed had nothing to do with the movements of the skidder, or its operation, except as stated. When the skidder was moved, these men, deckers and logmen, usually walked to the next place where the skidder was to be stopped, but sometimes they rode on the skidder, but had nothing to do with its movements, and no connection whatever with the operation of the cars by which the logs were moved from the places where they were piled by the skidder, or with the railroad generally. Operating with the same cable with which appellee was operating was an engineer, Strong, a tongman in the woods, and the horse boy. At the same time the other cable was being operated through the other boom by John Kane, engineer, Banks, a decker, a tongman, and a horse boy. The two cables were being operated on the same side of the skidder, pulling logs into the same pile. The operation of the two drums and cables was separate; that is, when one cable was fastened to a log in the woods, at a signal from the man doing this work, the engineer operating that cable set his machinery in motion, the drum revolved, and the log was pulled in without regard to the operation of the other cable and drum. Upon the occasion in question, the tongman operating with appellee had fastened his cable to a log, and the tongman operating with the other decker, Banks, had fastened his cable to a log near by; both logs to be pulled into the same deck or pile, which brought them substantially together. Appellee's log struck a stump or tree when near the pile, whereupon both cables were stopped, and appellee, as was his duty, was engaged in trying to unfasten the clamps, stooping over with his back to the skidder. While so engaged, Banks, the other decker, gave Kane, his engineer, a signal to go ahead, whereupon Kane put his engine in motion, thus pulling that log onto the pile when in some way it rolled over against appellee, catching him between the tree and the log, inflicting upon him very serious injuries. At the time, Kane could not see appellee, but Banks could; and Kane trusted Banks' signal and supposed that the way was clear. There is no evidence to authorize a finding of negligence on the part of any one connected with the work, except Tug Banks, and the evidence is sufficient to authorize the conclusion that the accident to appellee was proximately caused by the negligence of Banks in giving the signal to his engineer, Kane, to move his log, while appellee was in such a position as to be injured thereby. This seems to have been the view taken by the trial court, as shown by several charges given at the request of appellant.

The spur track on which the skidder was stationed at the time of the accident was about 1½ miles long. There seems to have been two of such spur tracks built and used by appellant for the purpose of reaching the timber, both about the same length, at the time of this accident. These tracks were temporary and were removed when they had served the purpose of getting out the logs contiguous thereto.

By the first assignment of error appellant complains of the action of the court in refusing to give to the jury the charge requested by him to return a verdict for defendant.

By the first proposition stated under this assignment the contention is presented that the accident was caused by the acts of Tug Banks, and if appellant was, at the time, controlling or operating a railroad, within the meaning of article 4560h, Sayles' Ann. Civ. St. 1897, still Banks and appellee were in the same grade of employment, doing the same character of work, and were working together at the same time and place and at the same piece of work and to common purpose, and hence were fellow servants.

[1] We are clearly of the opinion that all of the conditions of the statute referred to were fulfilled by the facts existing at the time of the accident, as established by the undisputed evidence, except the single condition or requirement that Banks and appellee were working "at the same piece of work." Article 4560h is as follows: "All persons who are engaged in the common service of such person, receiver, or corporation, controlling or operating a railroad or street railway, and who while so employed are in the same grade of employment and are doing the same character of work or service and are working together at the same time and place and at the same piece of work and to a common purpose, are fellow servants with each other. Employés who do not come within the provisions of this article shall not be considered fellow servants."

Under the authorities in this state we feel compelled to hold that appellant was "a person controlling or operating a railroad" within the meaning of those terms as used in this statute. The same terms are used in article 4560g. Over these spur tracks,

which differed substantially only in their length from any other logging railroad, appellant operated regular engines and cars for the purpose of hauling the logs. The danger to a man operating these engines and cars differed only in degree from the danger incurred by those connected with ordinary railroads. It seems to require some stretch of the imagination to speak of these spur tracks, used as they were, as a railroad; but the courts of this state seem to have gone that length. The facts in the case of Cunningham v. Neal, 101 Tex. 338, 107 'S. W. 539, 15 L. R. A. (N. S.) 479, as to the character of the road, are very different from those in the present case; but the opinion is significant and valuable here in the approval that is given to Lodwick Lumber Co. v. Taylor, 39 Tex. Civ. App. 302, 87 S. W. 358, Mounce v. Lodwick Lumber Co., 91 S. W. 241, and Lodwick Lumber Co. v. Mounce, 46 Tex. Civ. App. 230, 102 S. W. 142. The same point was decided by the Court of Civil Appeals of the Fourth District in Keystone Mills Co. v. Chambers, 118 S. W. 178, and we think it may be regarded as settled in this state that a logging railroad, built, owned, and operated by a private person or corporation solely for the purpose of hauling logs to its own mill, or, as in this case, the mill of another, is a "railroad" within the meaning of this statute.

[2] Appellee and Tug Banks were both in the employment of appellant in the same grade of employment, doing the same character of work, and were working together at the same time and place and to a common purpose at the time of the injury to appellee. If they were engaged at the same piece of work, then (if in the employment of appellant "as operator of a railroad," a question to be hereafter discussed) they were fellow servants; otherwise not.

The cases of Railway Co. v. Johnson, 47 Tex. Civ. App. 74, 103 S. W. 448, Lakey v. Railway Co., 33 Tex. Civ. App. 44, 75 S. W. 566, and Railway Co. v. Anderson, 102 Tex. 402, 118 S. W. 127, cited by appellant upon point, turn upon the question as to whether the person injured was engaged in operating a car on the railroad, and do not involve the question of whether the injured party and the person by whose negligent act he was injured were engaged upon the same piece of work. In the case of I. & G. N. R. R. Co. v. Still, 100 Tex. 499, 101 S. W. 442, cited and relied upon by appellant, and Long v. C., R. I. & T. Ry. Co., 94 Tex. 53, 57 S. W. 802, cited and relied upon by appellee, this question was directly involved.

In the Still Case the facts were that a bridge gang was engaged in repairing a platform at a railroad depot. In doing the work it became necessary to move a lot of cotton in bales from one part of the platform to another, and the gang of men—five of them —was directed to move the cotton, which they were doing, by rolling the bales with their hands, when Still was injured. Still and another man, during the entire work, would handle the same bales, and the other three would handle another bale. While Still and his companion were engaged in rolling their bale, the other three rolled their bale upon the foot and leg of 'Still and injured him. It was held that Still and the person moving the other bale of cotton which fell upon him were working at the same piece of work and were fellow servants within the meaning of article 4560h.

In the Long Case the facts were as follows: Plaintiff was one of a gang of 20 sectionmen in the employment of defendant who were at work on the section on the day plaintiff was injured. "It was the custom of all the sectionmen and their foreman who worked on said section to meet at the toolhouse, which is about 246 yards north of said bridge, at the beginning of each day's work, to procure the tools with which they worked. It was also their custom to return to said toolhouse and place their tools therein at the close of each day's work. The work of each day began and closed at the toolhouse. On the day above mentioned, at the hour to quit work and return their tools to the toolhouse, plaintiff and others of the sectionmen started north towards the toolhouse carrying the tools with which they had worked. Before reaching the bridge they met a hand car used on said section going south to get some tools to carry back to the toolhouse. This car was being operated by some of the sectionmen whom the foreman had directed to go after the things. This hand car upon returning, on its way to the toolhouse, overtook plaintiff and two other of the sectionmen while they were on the bridge walking towards the toolhouse, carrying their tools. It was running at a speed of about eight, miles an hour. The other two managed to step onto the ends of the cross-ties outside the rails before the car struck them; but plaintiff failed to do this and was run over by said hand car at the point on defendant's track just above the track of the Missouri, Kansas & Texas Railway and was run over by said hand car and injured." It was held that plaintiff and those operating the hand car were not doing the same piece of work, and hence were not fellowservants. Says the court: "Nor do we think that it can be said that, at the very time of the accident, the plaintiff and those operating the hand car were doing the same piece of work. If the injury had been inflicted by one of the employés working the hand car upon another who was then engaged in operating the same car, it should be held that they were engaged upon the same piece of work. But it would seem that each employé who was carrying one or more tools without the aid of another was engaged in a different piece of work from that which was

being done by any one of his coemployés."

In the Long Case, the court says, referring to the terms "same character of work" and "same piece of work" used in the statute, that "terms more indefinite could hardly have been found," and that their meaning is not at all clear, and for this reason the court declines to lay down any general rule to be followed, but contents itself with the endeavor to apply the terms to the facts of the particular case. In the Still Case, the court says that "the men were all working together in removing the cotton, a work that was to be done at once and by all of the employés then engaged, without any particular part to be accomplished by one or more without connection with the others."

We think the facts of this case distinguish it from the Still Case, and bring it more nearly within the rule of the Long Case. Each of the cables, booms, and drums operated in entire disconnection from the other. The engineer, decker, and tongman working with one cable had no connection whatever with the same persons operating the other, as we have attempted fully to show in our conclusions of fact. Strong, as engineer, controlled the movement of one cable, which he operated upon signals from appellee and the tongman in the woods working with him, without regard to the movement of the other cable, except possibly that each was so operated as not to interfere with the operation of the other; but, whether operating on the same or opposite sides of the skidder, the crew of each had to do only with the particular cable with which they worked. That the two cables, when appellee was hurt, were attached to two separate logs lying near together in the woods, and were being, at the time, dragged to a common point, and were very close together, we do not think affects the character of their use as separate and distinct, the one from the other. We conclude that appellee and Tug Banks were not working at the same piece of work at the time appellee received his injuries.

[3] The second proposition stated under this assignment of error, that the court should have instructed a verdict for defendant, is that appellee Woolsey was not working for appellant Hampton as an operator of a railroad, nor was Tug Banks, and therefore Banks was his fellow servant, for whose negligence appellant is not liable.

This proposition presents a much more serious question, and one upon which we have not been able to find any authority, either direct or specially useful by way of analogy, except the two cases hereafter referred to.

While it is true that under the authorities in this state a tramroad, or logging road, operated by a lumber company purely as a private business, in connection with its sawmill, is a "railroad," and such owner the "operator of a railroad" within the meaning of the fellow-servant act, and it must be conceded that both appellee and Tug Banks were in the employment of the owner and operator of such a railroad, we must hold, under the undisputed evidence, that their employment did not have such relation to the operation of the railroad as to bring them within the meaning and intent of the act. To hold otherwise would, in its logical consequences, extend the protection of the act to every person in the employment of appellant in and about his principal business of furnishing logs to the mill of the Hayward Lumber Company, no matter how remote his work was from the operation of the short spur track, the use of which was merely one of the necessary adjuncts of the business.

The case of M., K. & T. Ry. Co. v. Freeman was a suit to recover damages from the railway company for death caused by the negligence of a nurse employed by the company at a smallpox camp. An incompetent nurse employed at the camp left the camp without taking any care to change or disinfect his clothing, came in contact with another person, and thereby communicated the disease to him, from whose death thereby the suit resulted, under the provisions of the death statute. Article 3017, R. S. 1895. The death was directly traceable to the negligence of this nurse, who was the servant of the company. Conceding these facts, the court holds, in an elaborate opinion by Associate Justice Williams, that the business in which the negligent servant was employed did not have such relation to the operation of the railroad as to bring the case within the meaning and intent of the statute referred to. Much that is said in the opinion applies by analogy to the facts of the present case. We feel justified in making the following somewhat lengthy quotation from the opinion: "Without going further into detail, we think it evident that, if such a relation as that which existed between this detention camp and the railroad were held to make the keeping of the camp a part of the proper business of the company as owner of the railroad conducting a carrying business, it would be found impracticable to fix a limit at which we could stop short of the broad proposition that such companies and individuals, merely because they own and operate railroads, or some of the vehicles mentioned in the statute, are responsible for all deaths caused by their employés in any business. Such a construction of the statute would, as we have seen, take away all foundation for the discrimination which the Legislature has made between those engaged in the business specified in the statute and other persons and corporations, making the former responsible for deaths occurring in the prosecution of collateral businesses when others engaged in like businesses are not held to a like ac-

countability. The construction which limits the liability to deaths occurring in connection with the railroad business proper is by no means a narrow or strict one. On the contrary, a much narrower one than we as yet feel inclined to recognize might be put upon the language of the statute. When the purpose of the Legislature to give such actions only for deaths caused by employés of those engaged in a certain business is so plain, the courts have no right to include other cases; and the most liberal construction which, in our opinion, the statute justifies, is that which we have indicated. Any indefiniteness in the rule grows out of the indefiniteness of the statute. This is no justification for the courts to stretch the statute to cover cases not embraced by it. Turner v. Cross, 83 Tex. 218 [18 S. W. 578, 15 L. R. A. 262]." M., K. & T. Ry. Co. v. Freeman, 97 Tex. 403, 79 S. W. 13.

The case of Cameron & Co. v. McSween, 137 S. W. 139, lately decided by this court, likewise arose under article 3017, R. S. 1895. Cameron & Co. owned and operated a logging railroad, in connection with their sawmill, a private enterprise. The company had engaged a physician, who was paid by deducting money from the wages of all its employés engaged in the mill and in the operation of this tramroad. McSween was one of the employés about the railroad, and as such was entitled to have the services of the company physician in treating himself and family when sick. The suit is predicated upon the death of his wife, alleged to have been caused by the negligence of the company physician. It was held that the contract on the part of the company was not essential nor peculiar to the business of operating the railroad, but merely collateral thereto, and that therefore the defendant could not be charged with liability, under the statute referred to, for the death of Mrs. McSween. We do not pretend that the cited cases are directly in point; but we only refer to them as supporting, by analogy, our views in the construction of article 4560h, Sayles' Ann. Civ. St. 1897, under which the liability of appellant must be established, if there is any liability. The purpose and the terms of the death statute and the fellow-servant statute are so similar that an interpretation of the one cannot but be useful in determining the meaning and intent of the other.

Referring to the undisputed facts, it appears that even if it be held that the short spur was a railroad, and the skidder a car, neither Tug Banks nor appellee had anything to do with the operation of either as such. The skidder was, it is true, carried by the propelling power of its own machinery, along to the place where it was to work; but its real work, which alone it was designed to accomplish, was done after it had arrived within reach of the logs, when it was made fast and immovable, which had to be done before it could begin to do the work which it was designed to

aid in. The iron rails only served as a convenient means to get it to the place where it was to perform its work. It transported nothing except itself, which included its machinery. It was in fact no part of the railroad. Appellee and Banks had nothing to do with the operation of this skidder until it was made fast and began its real work of moving the logs from the woods to a convenient place along the track for loading on the cars proper, and transportation to the place of delivery. The purpose of the railroad was to furnish the means of transportation of the logs when loaded on the cars. The rails, being laid for this purpose, were used also as a convenient means of getting the skidder to the place where it was to operate. Suppose the skidder, instead of being carried to this place over the rails, had been carried there along an ordinary road or through the woods by mules or oxen, and then put in the same service it was engaged in when appellee was hurt, we think there could be no question that it could not be considered as a part of the operation of the railroad. We can see no substantial difference so far as concerns the application of the statute to the facts of this case arising from the use of the rails for the skidder to run over to the place where it was to do its work. If, instead of using this skidder, appellant had employed a lot of carrylogs, pulled by mules or oxen, to haul the logs from the woods to the railroad track, such means of transportation would have performed exactly the same function, with relation to the operation of the railroad, as was performed by the skidder, and Banks and appellee working with such carry-logs would have had just as much to do and just as much connection with the operation of the railroad as they actually had in their work in connection with the skidder.

In Jarvis v. Hitch, 161 Ind. 217, 67 N. E. 1057, the Supreme Court of Indiana, construing a similar statute, held that a pile driver consisting of a steam engine placed on a flat car at one end, a driver used in raising the hammer at the other end, all forming one machine capable of self-propulsion by means of a sprocket wheel on the axle under the boiler connected by a chain with the engine, the chain being moved when driving a pile, was not a locomotive engine within the meaning of the statute. The reasoning of the court is applicable here in support of the contention that the skidder was not a car within the meaning of the statute here under discussion, and is referred to for that purpose.

It would extend the application of the fellow-servant doctrine logically no further to hold that laborers engaged in felling trees to be transported first to the track and then on proper cars to the place of delivery came within its terms. The difference between the work of cutting the tree down, and hauling it a hundred or more feet to the track, is insignificant. Both in a way were a part of

the operation of logging the mill. To give such a construction to the statute would make a discrimination against appellant that could not be rested upon any reasonable classification of his business as operator of a railroad. Without extending this argument farther, our conclusion is that appellee and Banks were not servants and employés of appellant as operator of a railroad within the meaning of the act in question. Without the aid of this act or article 4560f it is not contended that they were not fellow servants. Article 4560f exempts from the operation of the fellow-servant rule those "engaged in the work of operating the car, locomotive or trains" of any person, receiver, or corporation operating a railroad or street railway.

It is entirely clear that appellee and Banks were not engaged in operating a locomotive or train on this railroad, and that from their connection with this skidder they cannot be held to have been engaged in operating a car. Akeson v. Railway Co., 106 Iowa, 54, 75 N. W. 678. They had absolutely nothing to do with the movement of the skidder from place to place, and, when it was stopped and made fast for its work, their only work was to fasten and unfasten the several decking and pulling cables to the logs. Railway Co. v. Anderson, 102 Tex. 402, 118 S. W. 127; Lakey v. Railway Co., 33 Tex. Civ. App. 44, 75 S. W. 566.

We therefore hold that under the undisputed evidence Banks and appellee were fellow servants, and that appellant is not liable for the injury to appellee caused by the negligence of Banks. It follows that the jury should have been peremptorily instructed to return a verdict for appellant. The evidence appears to have been fully developed, and it is unnecessary to remand the cause for another trial. The judgment of the trial court is therefore reversed, and judgment here rendered for appellant. This renders it unnecessary to consider other assignments of error, which become immaterial.

Reversed and rendered.