Citizens Railway and Light Company, Appellant, v.
Forepaugh and Sells Bros. Shows.

**Street railroads:** CONSTRUCTION AND MAINTENANCE OF TRACK: DUTY
OF COMPANY. It is the duty of a street railway company to con-
struct and maintain its track and roadbed with reference to the
surface of the street in such manner as not to obstruct or render
it unsafe for ordinary travel; and where its track is constructed
above the surface it can not insist that travelers keep off that part
of the street to avoid injury to the track.

**Same:** NEGLIGENCE: INSTRUCTIONS: PREJUDICE. In this action by a
street car company for injury to its roadbed, alleged to have been
caused by defendant in transporting its circus outfit along the
street on which the road was operated, there was evidence that the
street was muddy and soft, and it was claimed that the track
was an obstruction to the street because the spaces between the
ties and rails had not been filled in to a level with the top of the
rails. The court instructed that it was the duty of plaintiff to
construct its track so that the surface of the street should be level
with the top of the rails, and if plaintiff failed to so construct
and maintain the same it was negligent, and if such negligence
contributed to the injury of which it complained it could not
recover, unless it established that the injury was the result of
defendant's negligent use of the street after it knew the condition
of the same, and by the exercise of ordinary care could not have
avoided the injury. *Held,* that in view of the defendant's un-
disputed knowledge of the construction of the track and the con-
dition of the street before attempting to use it, plaintiff was not
prejudiced by the court's improper reference to an alleged breach
of duty in the manner of constructing and maintaining its track
and roadbed, as a matter of contributory negligence.

*Appeal from Muscatine District Court.*—Hon. J. W.
Bollinger, Judge.

Saturday, November 19, 1910.

Action for damages resulted in a judgment for de-
fendant. The plaintiff appeals.—*Affirmed.*

*E. M. Warner, E. F. Richman,* and *J. G. Kammerer,* for appellant.

*Thompson & Thompson,* for appellee.

Ladd, J.—One of the plaintiff's street car lines extends along the center of East Second Street, in Muscatine, and the intersecting street known as Park Avenue. On the 20th of June, 1906, the three trains carrying defendant's wagons, animals, tent, and other materials essential to the public exhibition of a circus and menagerie stopped and were unloaded at the railway crossing on East Second Street. The most direct route from there to the show ground to the east was on this street, level for a block and one-half to Mud Creek bridge, then upgrade nearly four blocks to the top of East Hill, and level again for two blocks to the intersection with Park Avenue, and on it for about two blocks; and a portion of the wagons took this course. The streets had not been paved or macadamized, and, owing to recent rains and the condition of the soil, the surface having been removed about a year previous to bringing them down to grade, were in bad condition, and, in driving over the rails and ties in plaintiff's railway track, injury to the roadbed, rails, and ties is alleged to have been done by the teamsters in defendant's employment, and loss suffered in the interruption of some of plaintiff's street cars to plaintiff's damage for which recovery was sought. As contended by appellant, the court in instructing the jury confused the alleged breach of duty on the part of plaintiff in properly constructing and maintaining its roadbed and track with the doctrine of contributory negligence. It is not perceived in what manner the latter doctrine is involved. No act or omission of plaintiff contributed directly to the injury of its property. If it was at fault, this was in its failure to construct its roadbed as by law required, or in not so maintaining the same. But the roadbed had been

in like condition, save for the recent rains, for a long time. It had been completed in January, 1905, the surface being removed to a depth of one and one-half feet to grade, and in the following spring the city had brought the remainder of the street to grade. Whether it had ever filled the spaces between the ties and brought the roadbed to the level of the rails approximately was in dispute. Even if the ties were good and the rails securely fastened, this did not obviate their being an obstruction to travel if the roadbed was not brought up to grade as required. That after construction the earth may have settled between the ties— become "compacted" in the language of one witness— furnished no excuse for so leaving it, for it was plaintiff's duty, not only to properly construct its roadbed, but to so maintain it. If the track did constitute an obstruction, as appellant concedes, this did not preclude defendant and others from undertaking to drive along the roadbed or to cross the track if ordinary care was exercised in avoiding injury to plaintiff's property. That plaintiff's manager requested defendant to keep off the track can make no difference. Its franchise did not permit the exclusion of the public from the highway save as the passing of its cars occupied a portion of the street. Whether the defendant was negligent in that its teamsters drove along or across the roadbed at different places, in view of the muddy condition of the streets, there having been excessive rainfalls recently and a newly filled sewer being placed along on the left side of Park Avenue and a spring at the right near the intersection with East Second Street, and the use of blocks and other material to raise the wheels to the level of the rails in going over them, was for the jury to determine. That such issue was properly submitted is not questioned, save in that no mention was made in the instructions of the extraordinary traffic being handled. But there was no evidence that the wagons were of unusual weight or construction. In one the coupling was let out

to fifteen or eighteen feet, and it was very wide, and the load of seats large, but it was not to be assumed this was unusual when long· reaches and wheels wide apart are in common use. When wheels sank in the mud or were to be hauled over the rails, extra teams were employed or a street car assisted, and in one instance the elephants from the rear lifted the wagons out of the mire. But all this might well have happened in moving a wagon with an ordinary load from the mire, and there was no occasion for instructing with reference to extraordinary traffic on the street.

The main complaint, as previously intimated, is that the court submitted to the jury whether plaintiff was guilty of contributory negligence. With reference thereto it gave the following instructions:

(9) It was plaintiff's duty in laying and maintaining said track to use ordinary care, both toward its own property and the public, and to so lay it that the free use of the street by the ordinary traveling public would not be materially impaired, and to maintain it in that condition. This would involve the laying of the top of the rails substantially level with the surface of the street, filling in between the rails, putting in proper street crossings, and in using ordinary care to so maintain the said track. If plaintiff so constructed, and was so maintaining, its track at the time and places in controversy with ordinary care, it was not negligent. But, if it failed in such duty, it was negligent, and, if such negligence directly contributed or assisted in causing the injury of which it now complains, then plaintiff was guilty of what in law is called contributory negligence. Plaintiff claims it was free from, and defendant claims plaintiff was guilty of, contributory negligence. This question also you must determine.

(10) In doing so you should consider all the facts and circumstances in evidence bearing upon this proposition, including the manner and of what material said track at the said places was originally constructed and afterward maintained, what was its condition on June 20, 1906, whether or not it was an obstruction to the street at said

places, whether or not the rails were substantially level with the street or protruded above it, whether or not the track was properly filled between the rails and provided with proper street crossings, and, in short, whether or not plaintiff itself used ordinary care.  From all the facts and circumstances in evidence you must determine, as before told you, whether or not the plaintiff was guilty of contributory negligence in its acts and conduct, as to the injuries it claims to have sustained.

(11)  If you find that plaintiff sustained any injury to its track by reason of the negligence of defendant's employees, as charged, and if you also find by the preponderance or greater weight of evidence that plaintiff was free from any negligence on its part directly contributing or assisting in causing such injury, then defendant is liable therefor, provided plaintiff has proven the amount of its damages as hereinafter explained to you.  If plaintiff has failed so to prove its freedom from contributory negligence as to any injury to its track, then it can not recover for said injury in your verdict, unless it establishes and proves by a preponderance or greater weight of the evidence that such injury was caused by defendant's negligence, after defendant or its employees knew of plaintiff's negligence, and by the exercise of ordinary care on defendant's part such injury might have been avoided.  In other words, even if plaintiff was guilty of contributory negligence in the construction or maintenance of its said tracks, still this will not defeat its recovery for any damages done by defendant's negligence after defendant or its employees knew of plaintiff's negligence, and when by the exercise of ordinary care on defendant's part injury to plaintiff's track might have been avoided.

It will be noted that the first paragraph of the ninth instruction rightly defines the duty of a street railway company.  The principle is well settled that

1. STREET RAILROADS: construction and maintenance of track: duty of company.

such a company is bound to construct and maintain its track and roadbed with reference to the surface of the street, and in such manner as not to obstruct or render it unsafe for ordinary travel.  *Goodrich v. Railway,* 103 Iowa, 416;

*Groves v. Railway,* 109 Ky. 76 (58 S. W. 508, 52 L. R.
A. 448) ; *Schild v. Railway,* 133 N. Y. 449 (31 N. E. 327,
28 Am. St. Rep. 658) ; *Bradwell v. Railway,* 153 Pa. 105
(25 Atl. 623) ; *San Antonio Rapid Transit Street R. Co.
v. Limburger,* 88 Tex. 87 (30 S. W. 533, 53 Am. St. Rep.
730) ; *Fitts ·v. Cream City R. Co.,* 59 Wis. 323 (18 N.
W. 186) ; *Laredo v. Railway,* 23 Tex. Civ. App. 480 (56
S. W. 998). As said in *Memphis, P. P. & B. R. Co. v.
State,* 87 Tenn. 746 (11 S. W. 946).

These rules, laid down in respect to steam railway
companies, apply, not only to crossings, but to the entire
roadbed of street railway companies; for their occupation
of the street is held not to be a new burden upon the street,
or a diversion of its use as a highway, for the reason that
such occupation is assumed to be entirely compatible with
the use by the public. This is based upon the idea that a
street railway properly constructed and maintained is not
an obstruction, though it may be an inconvenience. When
it is so constructed or maintained as to become an obstruc-
tion, it ceases to preserve the character upon which ·its grant
of rights in public highways is predicated. The charter
of this company shows that it was intended that the space
occupied by it should be used by the public as a highway,
the right of way being given to defendant's cars. It is
its common-law duty to keep the space of the highway oc-
cupied by its roadbed (which extends at least to the ends
of its crossties) properly graded and in good repair, so
as not to be any obstruction to travel across the roadbed, or
longitudinally upon it, and also to keep the crossings where
its roadbed is traversed by streets in good repair.

Any failure of plaintiff to construct or maintain its
track and roadbed as required by law undoubtedly would
be a breach of duty and amount to negligence as to any
one injured thereby. And, as directed to
2. SAME:
negligence:
instructions:
prejudice. this inquiry—that is, whether the roadbed
was in the condition plaintiff was required
to construct and maintain it—the matters enumerated in
the tenth instruction were pertinent and for the considera-

tion of the jury. All of them bore directly upon the inquiry concerning the condition of the roadbed at the time defendant's teamsters drove along it with the wheels of one side between the rails or across or out of the track. In other words, the condition of the roadbed was treated as establishing plaintiff's negligence or want thereof. Such condition was important for the jury to ascertain as bearing on the degree of care which should have been exercised by defendant. Up to this point, then, no prejudice could have resulted from the designation of the omission to properly maintain the roadbed as contributory negligence. Nor do we think there was such error in the eleventh instruction, although the jury was told that unless plaintiff had shown its freedom of contributory negligence—i. e., that the roadbed was constructed and maintained as required by law—it could not recover "unless it establishes and proves by a preponderance or greater weight of evidence that such injury was caused by defendant's negligence after defendant or its employees knew of plaintiff's negligence (i. e., the condition of the roadbed), and, by the exercise of ordinary care on defendant's part, such injury might have been avoided." In the absence of such knowledge, defendant's employees would have had the right to assume the street to be in a reasonably safe condition, and therefore would not have been guilty of negligence in attempting to use it as they did. But the evidence is conclusive that they knew the condition of the roadbed. Its general superintendent, in charge of moving the wagons, walked the entire way to the show ground before the wagons had gone that way. Every teamster could not avoid noticing the condition of the roadbed as he drove the teams along the track. The alleged negligence of plaintiff was in leaving the track in that condition so that it was impossible that those driving wagons across or from the track could not have been aware of this lapse of duty on plaintiff's part in the preparation or care of the roadbed. The instruction

plainly told the jury that notwithstanding plaintiff's negligence, which it was impossible for defendant's employees not to know of, if any there was, they were required to exercise reasonable care to avoid injury to its property. Though the question as to defendant's knowledge was left to the jurors, it is inconceivable that they could have proceeded on any other theory than that defendant was aware of the condition of the track, and therefore was liable for any neglect in omitting to exercise reasonable care for the protection of plaintiff's property. While we do not approve the instructions, we are inclined, for the reasons stated, to regard them as having wrought no prejudice. The judgment is *affirmed*.