### MISSOURI–KANSAS–TEXAS R. CO. v. STATE.

### No. 8910.

Court of Civil Appeals of Texas. Austin.

July 19, 1939.

Rehearing Denied Sept. 20, 1939.

Chas. C. Huff and G. H. Penland, both of Dallas, Claude Pollard, of Austin, and Naman, Howell & Boswell, of Waco, for appellant.

Gerald C. Mann, Atty. Gen., George W. Barcus, Asst. Atty. Gen., and Dee Estes, of Fort Worth, for the State.

BAUGH, Justice.

The State, through the Attorney General, brought this suit against appellant for penalties for alleged violation by the Railroad Company of Art. 6380, R.C.S.1925, known as the full crew law. Trial was to the court without a jury, the Railroad Company found guilty of violating said statute as charged, and a penalty of $100 assessed against it; hence this appeal.

The question determinative of the appeal is whether the equipment involved and the manner of its use and operation on the occasion in question constituted a "construction train" as that term is used in Sec. 2 of Art. 6380, requiring a crew of one engineer, one fireman, one conductor, and two brakemen for such train. We have reached the conclusion that it did not. The only violation charged was that appellant did not have on duty on the occasion in question the two brakemen required by the statute as a part of such crew.

The equipment in question consisted of a heavy wrecking crane which, together with an upright boiler used in generating the steam power to operate it, and the machinery of operation, were all attached to and mounted upon a steel truck or flat car, all of which constituted a single unit weighing about 200 tons. The crane operated upon a revolving turret and by means of cables and pulleys, somewhat after the fashion of a steam shovel now in common use for excavations, loading, etc. The boiler was an upright boiler similar to those in use for hoisting elevators and materials in the construction of high buildings. Its primary purpose, design and use was for the operation of the crane. The engine, however, was also geared to the truck wheels so as to enable the unit to be moved slowly over the track, but its rate of speed in such movement was only about 4 or 5 miles an hour, and its mobility in this regard designed primarily to enable the engineer to change the position of the unit on the track so as to effectively operate the crane where and as needed along the track in any given area.

In addition to this unit there was a flat car coupled to it upon which the crane rested while being transported to and from a work zone. Also a water car, and on the occasion in question a coal car loaded with heavy stone for riprap purposes on right-of-way.

On the morning in question a regular freight train picked up all of this equipment at Smithville, pulled it to a point on the line in Bastrop County, 1.44 miles from Upton, uncoupled and left it there for needed track repairs. This repair work consumed about three and one-half hours' time, during which no trains were scheduled nor permitted to move over the line at this point. When this work was completed, the equipment was moved over the main tracks under its own power the 1.44 miles distance to a side track at Upton. This movement required about an hour's time. That night it was picked up by another regular freight train and returned to Smithville.

The railroad employees engaged in the operation and movement of this equipment consisted of a conductor, a foreman, a wrecker engineer, two section foremen, and their section gangs. It is not controverted that no fireman was present or needed in the operation of said equipment. On the other hand, it was shown that there was no place for a fireman on this equipment, and that the presence of one would have interfered with its operation. It was shown that

704

only one man in the entire force was in the transportation department of the Railroad Company,—that being the conductor-pilot. It was also shown that special training was required of an engineer to operate such engine; that a locomotive engineer, such as is clearly contemplated in the statute, could not operate this engine; and that the engineer so employed could not operate a locomotive engine.

The record further discloses that this particular character of equipment was not in common use, if in use at all, in 1909 when the Legislature enacted the full crew law; and manifestly not in contemplation of the legislators when that statute was passed. It is also manifest, we think, that the Legislature in prescribing the crews required for the different kinds of trains named in the statute, used the term "train" in its then understood meaning—that is, a series of cars drawn by a locomotive engine over the tracks of the railroad; or as indicating a transportation agency, one of the principal purposes of which was mobility of action over and upon the tracks of the railroad. The term as then understood connoted, and still does for that matter, mobility over the railroad as one of its primary functions.

On the other hand, the equipment here involved, as above described, has for its primary purpose an entirely different purpose and function, is not to be deemed a carrier of freight or passengers, and its mobility under its own power is but incidental to the performance of the work for which it was designed and manufactured.

It is not controverted that this equipment had never had, did not need, and could not safely use, a fireman required by the statute for a work train. Nor is it denied that the engineer in charge was not a locomotive engineer as contemplated by the Legislature and held by this court in Railroad Comm. v. Texas & N. O. R. Co., 42 S.W.2d 1091, writ refused, to have been meant by the statute. The only employees whose absence the State asserts resulted in a violation of the statute, though neither an engineer nor a fireman within the meaning of the statute was present, were two brakemen. Yet the record shows that over a period of 20 years in which this equipment had been in operation on appellant's road, brakemen as such had not been used; that the only service they could possibly have rendered was as flagmen; and that on the occasion in question there were present more than two employees familiar with such duties of brakemen, capable of performing such service if needed, and available for that purpose.

We think no good purpose would be served by discussing the issue here presented more at length. The controlling principles involved in the application of this statute were considered and discussed in Railroad Comm. v. Texas & N. O. R. Co., supra. We think there can be no doubt but that the Legislature never contemplated nor intended that the full crew law should apply to the equipment here involved and as operated on the occasion in question. Nor that it did not constitute a "construction train", as that term is used in Art. 6380.

But if it should be deemed to be a "construction train" within the purview of the statute, the absence of two regular brakemen being the only violations complained of by the State, we think that the presence of more than two men on the occasion in question, who were fully qualified, trained and available to discharge all of the duties regular brakemen could have discharged, had they been present, was sufficient to meet the safety requirements contemplated by the statute, and that the law was not violated in this regard.

The case of United States v. Fort Worth & Denver City Ry. Co., D.C., 21 F.Supp. 916, cited by the State in support of the trial court's judgment, is not applicable. That case involved the application of the Federal Safety Appliance Act, 45 U.S.C.A. § 1 et seq., to similar equipment there used in interstate commerce. Here we have a state statute dealing with a different subject matter.

Under the undisputed facts and rules laid down in Railroad Comm. v. Texas & N. O. R. Co., supra, we conclude that the trial court's judgment should be reversed and judgment here rendered for appellant, and it is so ordered.

Reversed and rendered.