## Jarvis, Receiver of the Louisville, Evansville & St. Louis Consolidated Railroad Company, *v.* Hitch.

[No. 20,151.   Filed June 26, 1903.]

Statutes.—*Language Adopted from English Statute.*—*Construction.*—*Employers' Liability Act.*—Where the legislature in the enactment of a law substantially adopts the language of an English statute, the meaning given the words of the statute by the courts of that country before the adoption thereof by the legislature of this State is persuasive, if not controlling, in determining the meaning of the words used therein. *pp. 219, 220.*

Master and Servant.—*Employers' Liability Act.*—*Railroads.*—*Locomotive Engine.*—*Pile-Driver.*—A machine used as a pile-driver consisting of a steam-engine placed upon one end of a flat car, and the driver, used in raising the hammer, placed at the other end of the car, all forming one machine, and containing a sprocket-wheel under the boiler, and a chain running from the engine to said wheel, by means of which the machine and car were moved from place to place on the track, is not a locomotive engine within the meaning of the fourth subdivision of §7083 Burns 1901, making railroads liable for injuries to an employe caused by the negligence of an employe in charge of a locomotive engine. *pp. 217-224.*

Same.— *Locomotive Engine.* — *What Constitutes.* — *Question of Law.*— Whether a machine consisting of a pile-driver and an engine is a locomotive engine within the meaning of the fourth subdivision of §7083 Burns 1901, is a question to be determined by the court, and not by the jury. *p. 224.*

From Gibson Circuit Court; *O. M. Welborn,* Judge.

Action by Oscar Hitch against George T. Jarvis, receiver of the Louisville, Evansville & St. Louis Consolidated Railroad Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court, under clause two of §1337j Burns 1901. *Reversed.*

*M. W. Fields, J. D. Welman* and *W. L. Taylor,* for appellant.

*L. C. Embree,* for appellee.

Monks, C. J.—This action was brought under the fourth subdivision of §1 of the act of March 4, 1893 (Acts 1893,

p. 294, §7083 Burns 1901) by appellee to recover damages for a personal injury received by him while in the service of appellant by reason of the alleged negligence of a person in the service of said appellant who had "charge of a locomotive engine upon a railway." A trial of said cause resulted in a verdict and judgment in favor of appellee.

The errors assigned call in question the action of the court in overruling appellant's demurrer to the complaint, appellant's demurrer to the second paragraph of reply, and appellant's motion for a new trial.

The fourth subdivision of said §7083, *supra,* reads as follows: "That every railroad or other corporation, except municipal, operating in this State, shall be liable for damages for personal injuries suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases: *  *  * (4) where such injury was caused by the negligence of any person in the service of such corporation who has charge of any signal, telegraph office, switch yard, shop, roundhouse, locomotive engine or train upon a railway."

We are satisfied that the complaint was sufficient to withstand the demurrer for want of facts, and that the court did not err in overruling the same.

The controlling question presented by the record is whether or not the machine alleged in the complaint to be a "locomotive engine" was such within the meaning of said fourth subdivision. It appears from the evidence that appellee and others in the service of appellant were engaged in repairing a certain trestle on appellant's line of road, and were using a pile-driver for that purpose. This machine consisted of a steam-engine placed on a flat car at one end, and the driver used in raising the hammer placed at the other end of the flat car, and all forming one machine. The engine was used to lift the hammer and let it drop on the pile and drive it down. There was a sprocket-wheel on the

axle under the boiler, and a chain running from the engine
to said wheel, by means of which said machine and the cars
belonging to it were moved from place to place on the track.
When driving a pile the chain was taken off of the sprocket-
wheel. The following is a correct cut of the machine as
shown by the record:

EXTENSION STEAM PILE-DRIVER, TYPE NO. 1.

The injury for which appellee sued in this action was
caused by the negligence of the person who had charge of
said machine. If said machine was not a locomotive en-
gine within the meaning of said fourth subdivision, the case
must be reversed. Said employers' liability act was adopted
by the legislature of this State in 1893, and said fourth
subdivision of the first section thereof, so far as a right of
action is given for injury caused by the negligence of per-
sons in charge of "any signal, * * * locomotive engine
or train upon a railway" is substantially the same as the
fifth subsection of the English employers' liability act of
1880. As the English employers' liability act was enacted

in 1880, the meaning given the words "locomotive engine" in said fifth subsection thereof by the courts of that country before the adoption by the legislature of this State of said fourth subdivision in 1893 is persuasive, if not controlling, in determining the meaning of the words "locomotive engine" in said fourth subdivision of §7083, *supra*. *City of Laporte* v. *Gamewell, etc., Co.,* 146 Ind. 466, 469, 35 L. R. A. 686, 58 Am. St. 359; *Commonwealth* v. *Hartnett,* 3 Gray (Mass.) 450, 451; *Pratt* v. *American Bell Tel. Co.,* 141 Mass. 225, 227, 5 N. E. 307, 55 Am. Rep. 465; *Ryalls* v. *Mechanics Mills,* 150 Mass. 190, 191, 193, 22 N. E. 766, 5 L. R. A. 667, 669, 670, and note on page 667; *Mellor* v. *Merchants Mfg. Co.,* 150 Mass. 362, 363, 23 N. E. 100, 5 L. R. A. 792, 793; *Mobile, etc., R. Co.* v. *Holborn,* 84 Ala. 133, 134, 4 South. 146; *Kansas City, etc., R. Co.* v. *Burton,* 97 Ala. 240, 12 South. 88; *Birmingham R., etc., Co.* v. *Allen,* 99 Ala. 359, 371, 13 South. 8, 20 L. R. A. 457, 460; *Colorado Milling, etc., Co.* v. *Mitchell,* 26 Colo. 284, 289, 58 Pac. 28; *Mitchell* v. *Colorado Milling, etc., Co.,* 12 Colo. App. 277, 281, 55 Pac. 736; *Sagers* v. *Nuckolls,* 3 Colo. App. 95, 32 Pac. 187; *Interstate Commerce Commission* v. *Baltimore, etc., R. Co.,* 145 U. S. 263, 284, 12 Sup. Ct. 844, 36 L. Ed. 699; *McDonald* v. *Hovey,* 110 U. S. 619, 628-630, 4 Sup. Ct. 142, 28 L. Ed. 269, and cases cited; *Missouri Pac. R. Co.* v. *Haley,* 25 Kan. 35, 53; Reno, Employers' Liability Acts (2d ed.), §3; Dresser, Employers' Liability, §3, p. 27; Endlich, Interp. of Stat., §371; Sutherland, Stat. Constr., §333; Black, Interp. of Laws, 160-162. See, also, *Board, etc.,* v. *Conner,* 155 Ind. 484, 496, and authorities cited; *Hilliker* v. *Citizens St. R. Co.,* 152 Ind. 86, 88.

It was said by this court in *City of Laporte* v. *Gamewell, etc., Co., supra,* at page 469: "It is a familiar rule that where a clause is taken from the constitution or statute of another state it will be deemed to have the meaning given it by the courts of that state."

In *Commonwealth* v. *Hartnett, supra,* at page 451, it was said by the court: "It is common learning, that the adjudged construction of the terms of a statute is enacted, as well as the terms themselves, when an act, which has been passed by the legislature of one state or country, is afterwards passed by the legislature of another * * * for if it were intended to exclude any known construction of a previous statute, the legal presumption is that its terms would be so changed as to effect that intention."

The Colorado employers' liability act of 1893 was copied from the Massachusetts act of 1887, and the supreme court of Colorado, in *Colorado Milling, etc., Co.* v. *Mitchell, supra,* at page 289, said: "This is the construction given by the supreme court of Massachusetts to their act of 1887, from which our act was copied; and our legislature presumably adopted the act with the construction that had been given it by the courts of that state."

It was held by the Supreme Court of the United States, in *Interstate Commerce Commission* v. *Baltimore, etc., R. Co., supra,* and in *McDonald* v. *Hovey, supra,* that when congress adopts the language of an English statute, the federal courts will presume that it had in mind the construction given by the English courts, and intended to incorporate it into the statute. In *Interstate Commerce Commission* v. *Baltimore, etc., R. Co., supra,* at page 284, that court said: "But so far as relates to the question of 'undue preference,' it may be presumed that congress, in adopting the language of the English act, had in mind the constructions given these words by the English courts, and intended to incorporate them into the statute. *McDonald* v. *Hovey,* 110 U. S. 619."

A statute of Iowa concerning the liability of railroads to its employes, enacted in 1869, was afterwards adopted by the legislature of Kansas, and the supreme court of Kansas in *Missouri Pac. R. Co.* v. *Haley, supra,* said concerning the same, at page 53: "As our state has adopted the statute

from Iowa, the judicial construction given to it in that state follows it to this state. *Bemis* v. *Becker,* 1 Kan. 226."

The meaning of the term "locomotive engine," as used in said English employers' liability act was decided in 1883 by the Queen's Bench Division in *Murphy* v. *Wilson,* 48 L. T. N. S. 788, 52 L. J. Q. B. D. 524, 525. In that case Murphy sued to recover compensation for personal injury caused to him while in the service of Wilson & Son, as he alleged, by reason of the negligence of a person in the service of said Wilson & Son, who "had charge and control of a locomotive engine on a railroad." It was shown by the evidence that the alleged "locomotive engine" was a "machine consisting of a crane and a steam-engine working it, both being mounted on the same truck and forming one machine, and being so constructed that the engine served the double purpose of moving the machine from place to place and of raising the stone by means of the crane." Pollock, B., said, in 52 L. J. Q. B. D. 524: "This machine was a steam-crane, so fixed on a trolly that, by means of shifting gear working on the axles of the trolly, the crane and trolly could be moved from one place to another along rails, which in the present case were only temporary. It can only be said to be a locomotive engine in the sense that it is an engine, and by means of the trolly to which it is affixed it is capable of being moved about. Now the term 'locomotive engine' has a well-known significance, and is used generally for an engine to draw a train of trucks or cars along a permanent or temporary set of rails. There is also a well-known class of engines, such as traction-engines, which, though they are capable of being moved from place to place, are never spoken of as locomotive engines. Was it then the intention of the legislature to include these latter, or such an engine as the steam-crane in question, or only to refer to those engines that are usually styled locomotive engines? The words used in the subsection, in connection with the term 'locomotive engine,' refer exclusively

to well-known things connected with the ordinary working of a railway. The machine in this case is intended to lift heavy weights of stone and other materials used in constructing a railway, having besides an accidental [incidental] power of applying its steam force to the trolly. If the legislature had intended to include any such machine they would have used proper terms. I can see no reason why the defendants in this case should be held liable under this section any more than if it were a case of a steam-printing machine or a punching machine." Lopes, J., in 52 L. J. Q. B. D. 524, said: "I am of the same opinion. The question is, can a steam-crane used for purposes for which cranes are used generally, but which is propelled by steam when it is desired to move it, be called, within the words of subsection five, a locomotive engine? I think that the words 'locomotive engine' in section one, subsection five, of the employers' liability act, 1880, which have a well-known and ordinary meaning, must be read as having been used by the legislature with that meaning, and only in that sense. It is difficult to suppose that if the legislature had intended to include such a machine as this they would have employed words that in their proper and usual signification would only apply to a specific class of engine. And I am fortified in this reading of the subsection by the words in company with which I find the expression 'locomotive engine' words which refer entirely to the ordinary working of a railway. I find words such as 'train,' 'signal-box,' 'points,' and so forth. This indicates to my mind that in using the words 'locomotive engine' the legislature only contemplated an engine used for traction purposes on a railway."

The machine in this case was intended to drive piles, and was constructed and used for that purpose, and, as an incident, there was attached to it the power to move itself and the cars belonging to it from place to place by applying its steam-power to one of the axles upon which it rested. There

is no substantial difference between the steam-crane in the case of *Murphy* v. *Wilson, supra,* and the steam pile-driver in this case, except the first was used to lift heavy weights, and the latter to drive piles. We think it is clear that the steam pile-driver was not a "locomotive engine" within the meaning of said fourth subdivision of §1 of the act of 1893 (acts 1893, p. 294, §7083 Burns 1901). By the term "locomotive engine" used in said clause the legislature only intended an engine constructed and used for traction purposes on a railroad track. Dresser, Employers' Liability, §77; Reno, Employers' Liability Acts (2d ed.), §106; Beven, Employers' Liability (2d ed.), §27, p. 169; Ruegg, Employers' Liability (5th ed.), 115, 116; Elliott, Railroads, §1338. See, also, *Perry* v. *Old Colony R. Co.,* 164 Mass. 296, 41 N. E. 289; *Thyng* v. *Fitchburg R. Co.,* 156 Mass. 13, 18, 30 N. E. 169, 32 Am. St. 425; *Hartford* v. *Northern Pac. R. Co.,* 91 Wis. 374, 64 N. W. 1033; 13 Am. & Eng. Ency. Law, 999, note 1.

Appellant at the proper time requested the court to instruct the jury that said machine was not a locomotive engine, and for that reason the verdict should be for appellant, which instruction the court refused to give. The instruction should have been given. Whether the machine alleged in the complaint to be a "locomotive engine" was such within the meaning of said fourth subdivision was a question to be determined by the court, and not by the jury. The verdict of the jury was contrary to law. It follows from what has been said that the court erred in overruling the appellant's motion for a new trial, and in overruling appellant's demurrer to the second paragraph of reply.

Judgment reversed, with instructions to sustain appellant's motion for a new trial, and sustain appellant's demurrer to the second paragraph of reply, and for further proceedings in accordance with this opinion.