GEO RESOURCES, INC., Appellant,

v.

TAX COMMISSIONER of the State of North Dakota, Appellee.

Civ. No. 9674.

Supreme Court of North Dakota.

Jan. 24, 1980.

Rolfstad, Winkjer, McKennett, Kaiser & Stenehjem, Williston, for appellant; argued by Dean Winkjer, Williston.

Kenneth M. Jakes and Robert W. Wirtz, Special Asst. Attys. Gen., Tax Dept., Bismarck, for appellee; argued by Robert W. Wirtz, Spec. Asst. Atty. Gen., Bismarck.

PEDERSON, Justice.

This is an appeal by Geo Resources, Inc., from a decision of the district court which affirmed the decision of the tax commissioner that leonardite is coal for the purposes of the coal severance tax. We affirm.

Geo Resources, Inc., mines and markets a substance known in North Dakota as "leonardite." In September 1976, the tax commissioner gave notice requiring Geo Resources to file quarterly coal severance tax reports and to pay coal severance taxes on the leonardite it mined. Geo Resources responded with the statement: "No coal severed during this reporting period. The following tons of leonardite were severed during the quarter and is supplied for informational purposes only."

On the basis of the information provided by Geo Resources, the tax commissioner assessed a coal severance tax of $7,281.01. Geo Resources, pursuant to § 57–61–04, NDCC,[1] requested a hearing on the matter.

After a hearing, the tax commissioner determined that the coal severance tax was

---

1. "Any owner or operator aggrieved by a decision of the tax commissioner may make application in writing within fifteen days of notification for a hearing . . . ."

properly assessed. Geo Resources appealed to the district court. On motion of Geo Resources the matter was again remanded to the tax commissioner for the receipt of additional evidence (§ 28–32–18, NDCC).

The additional evidence was received and thereafter the tax commissioner reaffirmed his previous decision and the case was again appealed to the district court. The district court affirmed the tax commissioner's decision, and this appeal followed.

The only issue in this case is whether or not, as a matter of fact or law, leonardite mined and marketed by Geo Resources is subject to the coal severance tax imposed by Chapter 57–61, NDCC. Geo Resources argues that (1) leonardite is a separate mineral, not coal, and consequently is not subject to the tax, and (2) because the legislative intent with respect to the coal severance tax statute is uncertain, the statute must be strictly construed against the tax commissioner.

■ This court has adopted the general rule that where a tax statute is ambiguous so that the legislative intention with respect to the meaning of the statute is doubtful, the doubt must be resolved in favor of the taxpayer. *Great Northern Railway Company v. Flaten*, 225 N.W.2d 75 (N.D.1974), *Great Northern Ry. Co. v. Severson*, 78 N.D. 610, 50 N.W.2d 889 (1952). With this admonition in mind, we proceed to examine the facts upon which the tax commissioner's determination is based.

Under the Administrative Agencies Practice Act, Chapter 28–32, NDCC, courts review the findings, conclusions, and decision of the administrative agency, and since this matter was heard prior to the amendment of § 28–32–19, NDCC,[2] we are bound to uphold the findings of fact which are supported by substantial evidence. See *Steele v. North Dakota Workmen's Comp. Bur.*, 273 N.W.2d 692 (N.D.1979).

The tax commissioner made, among others, the following findings of fact:

(1) That Geo Resources mines leonardite under a coal lease.

(2) That Geo Resources markets the substance referred to as leonardite as lignite.

(3) That some of the leonardite is sold by Geo Resources for use as a fertilizer.

(4) That the substance referred to as leonardite is considered lignite in the marketplace.

(5) That the substance referred to as leonardite is considered partially oxidized lignite in the scientific community.

(6) That leonardite is a partially oxidized variety of coal which has a Btu[3] heating value.

(7) That the United States Bureau of Mines and the Interstate Commerce Commission consider the substance referred to as leonardite to be coal.

The exhibits and testimony introduced at the administrative hearing provide substantial evidence in support of these findings. This evidence is illustrated by:

(1) Papers written by Philip Freeman, a research chemist at the Grand Forks Coal Research Laboratory, which describe leonardite as "a form of naturally-oxidized lignite commonly associated with shallow-lying beds of lignite or found in surface outcrops," state that "as the fuel value of coal declines owing to oxidation, its content of alkali extractable humic matter increases. At present, in the Dakota-Montana lignite areas, there are deposits of such coal in various stages of oxidation totaling millions of tons."

(2) Testimony by Leonard Fowkes, a recently retired research chemist and the author of numerous publications on lignite coal, that leonardite does have heating val-

---

**2.** Prior to amendment in 1977, the pertinent provisions of § 28–32–19 were: "the court shall affirm the decision of the agency unless it shall find that such decision or determination is not in accordance with law, or that . . . the findings of fact made by the agency are not supported by the evidence, or that the conclu-

sions and decision of the agency are not supported by its findings of fact." One of the changes in 1977 required that findings be supported by a preponderance of the evidence.

**3.** British thermal units.

ue, and that the difference between leonardite and lignite coal involves "a slightly greater oxygen content" in leonardite.

(3) A document prepared by M. Giller of the Department of the Interior, Bureau of Land Management, which refers to Bureau of Mines Circular 7691, July 1954, "Technology of Lignitic Coals," stating that "leonardite is generally believed to be naturally altered (presumably oxidized) lignite and often referred to as weathered lignite."

■ There is also evidence in the record that the United States Internal Revenue Service defines leonardite as a separately identifiable mineral with characteristics that distinguish it from lignite, and there is other evidence in the record which supports that conclusion. The mere fact that there is evidence in the record which would support an opposite finding does not permit this court to conclude that the findings made by the tax commissioner are not supported by substantial evidence. The findings of fact made by the tax commissioner do support the tax commissioner's conclusion and decision. That leaves for us only the question: Is the decision of the tax commissioner in accordance with law? See footnote 2, *supra*.

■ It appears that in enacting Chapter 57–61, NDCC, in 1975, the Legislature intended that *all* forms of coal were to be subject to the coal severance tax, not only when the coal is used for fuel.

First of all, § 1–01–40, NDCC, provides the following definition of coal:

"1–01–40. Coal — Definition. — *Wherever the word 'coal' appears* in the laws of this state, or in the resolutions of the legislative assembly, *it shall mean all kinds of coal, and shall include what is known as lignite coal, unless a contrary intention plainly appears.*" [Emphasis added.]

■ We find nothing in Chapter 57–61 that indicates that the Legislature intended that oxidized lignite (i. e., leonardite) should be distinguished from nonoxidized lignite.

Leonardite, like nonoxidized lignite, is a nonrenewable resource which is severed from the land through strip-mining. The tax is labeled "severance" tax—not a fuel tax, and is in lieu of all sales and use taxes. It has not been alleged or shown in this case that leonardite sales have been subject to sales or use taxes.

Section 57–61–10 provides that the money collected through the severance tax is to be allocated to the "coal development fund." This fund is used to compensate the state for the depletion of its resources and to raise revenue for impact costs (Ch. 57–62, NDCC). Thus, it was the depletion of a natural resource, rather than its use, that was the inspiration of the coal severance tax.

A further indication that the coal severance tax was not intended to be imposed merely as a tax on fuel can be found in § 57–62–01, which defines "coal development" as follows:

"1. 'Coal development' means the mining of coal and industries directly related to the processing of coal, including, but not limited to: the generation of electricity from coal or coal products, coal gasification, coal liquefaction, *and the manufacture of fertilizer from coal.*" [Emphasis added.]

Leonardite is used as a fertilizer for soil due to its high humic acid content, and the record shows that Geo Resources sells some of its leonardite for this purpose. We cannot conclude, as a matter of law, that leonardite is not coal as the term is used in the severance tax law. Nor can we conclude, in view of the above analysis of the coal severance tax, that the legislative intent with respect to the meaning of the coal severance statute is doubtful. This is not the proper case for invoking the rule from the two *Great Northern* cases, *supra*, that doubts be resolved in favor of the taxpayer.

■ We do not mean to imply that the Legislature could not specifically exclude leonardite from the coal severance tax if it so desired. In fact, it appears that the Legislature did attempt to do so in the 1979 session through House Bill 1335, which was

ultimately vetoed by the Governor (Ch. 662, S.L.1979). We are concerned here only with whether or not the tax commissioner's determination that leonardite is a variety of coal is supported by substantial evidence, and whether or not the tax commissioner's decision is in accordance with law. We are persuaded that there was substantial evidence to support the tax commissioner's decision, and it was in accordance with law. The judgment of the district court affirming the decision of the tax commissioner is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.