Betty L. MILLS, Applicant
and Appellant,

v.

BOARD OF COUNTY COMMISSIONERS,
BURLEIGH COUNTY, North Dakota,
Respondent and Appellee,

and

North Dakota State Tax Commissioner, a
party pursuant to Section 57-23.2-02,
North Dakota Century Code, Respondent.

Civ. No. 9880.

Supreme Court of North Dakota.

May 15, 1981.

Mills & Moore, Bismarck, for applicant
and appellant; argued by Sherry Mills
Moore, Bismarck.

John M. Olson, State's Atty., and Gail
Hagerty, Asst. State's Atty., Bismarck, for
respondent and appellee Board of County
Commissioners; argued by Gail Hagerty.

VANDE WALLE, Justice.

Betty L. Mills appeals from a judgment
of the district court of Burleigh County
reversing a decision of the Tax Appeals
Board. We affirm the judgment of the
district court.

In 1977, following assessment of her land and residence, Mills applied to the Burleigh County Board of Commissioners ("County Board") for abatement of taxes on the home as a farm improvement and also alleged an arbitrary assessment of the land. The County Board denied the application for abatement and Mills appealed to the North Dakota Tax Appeals Board.[1] The Tax Appeals Board determined that the home was exempt as a farm improvement, that the land was arbitrarily assessed, and ordered an abatement of the taxes. The County Board appealed the decision of the Tax Appeals Board to the district court of Burleigh County,[2] which reversed the Tax Appeals Board decision that the home was exempt as a farm improvement. Mills has appealed the district court's decision that the home is not exempt as a farm improvement.[3] She raises two issues on appeal:

1. Is the Tax Appeals Board's finding that the taxpayer is a farmer supported by the evidence?

2. Is the Tax Appeals Board's finding that the land is agricultural supported by the evidence?

Before considering the issues raised on appeal we briefly consider the function of the courts in an appeal from a decision of the Tax Appeals Board. This court has not specifically defined the scope of review in an appeal from a decision of the Tax Appeals Board. In *Caldis v. Board of Cty. Comrs., Grand Forks Cty.*, 279 N.W.2d 665 (N.D.1979), the issue of whether or not the Tax Appeals Board's procedures are subject to the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C., was raised but not answered.[4]

█ The district court as well as the parties to this appeal assume that the procedures governing the review of a decision of an administrative agency apply to appeals from the Tax Appeals Board and we will apply that standard for the purpose of our review.[5] We have said that on an appeal from the decision of an administrative agency we review the findings of fact, conclusions of law, and order made by the agency rather than the findings of the district court. *Bromley v. North Dakota Workmen's Compensation Bureau*, 304 N.W.2d 412 (N.D.1981). Pursuant to the pertinent provisions of Section 28–32–19, N.D.C.C., we must affirm the decision of the administrative agency unless we find:

"1. The decision or determination is not in accordance with the law.

"2. . . .

"3. . . .

"4. . . .

1. The application for abatement to the Board of County Commissioners was made pursuant to the provisions of Chapter 57–23, N.D.C.C. Section 57–23.1–01, N.D.C.C., permits any person or governing body of a political subdivision aggrieved by a decision of a board of county commissioners subsequent to a hearing held pursuant to Section 57–23–06 to appeal the decision to the Tax Appeals Board.

2. Section 57–23.1–02 permits any party aggrieved by a decision of the Tax Appeals Board to appeal that decision to the district court.

3. The Burleigh County Board of Commissioners did not appeal that part of the decision of the district court affirming the decision of the Tax Appeals Board that the land was arbitrarily assessed; thus that matter is not before us on appeal.

4. The issue was not answered because: "Our court has reiterated the general rule numerous times that parties cannot raise an issue for the first time on appeal to the supreme court, ex-

cept in cases involving original jurisdiction and certain criminal matters." *Caldis v. Board of Cty. Comrs., Grand Forks Cty.*, 279 N.W.2d 665, 667 (N.D.1979).

5. Section 28–32–01(1), N.D.C.C., defines "administrative agency" to include "any . . . board, . . . having state-wide jurisdiction and authority to make any order, finding, determination, award, or assessment which has the force and effect of law and which by statute is subject to review in the courts of this state." Section 57–23.1–02, N.D.C.C., provides, in part:

"The board may abate or order the refund of, in whole or in part, any assessment or tax upon real or personal property for any of the grounds provided for in section 57–23–04. . . . Any party aggrieved by a decision of the tax appeals board may appeal to the district court."

Section 57–23–04(3), N.D.C.C., permits an abatement or refund of taxes when the property is exempt from the tax.

"5. The findings of fact made by the agency are not supported by the preponderance of the evidence.

"6. The conclusions and decision of the agency are not supported by its findings of fact."

In *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979), we stated:

"In construing the 'preponderance of the evidence' standard to permit us to apply the weight-of-the-evidence test to the factual findings of an administrative agency, we do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record."

We look now at the findings of fact and conclusions of law of the Tax Appeals Board pertinent to the issues before us:

## "FINDINGS OF FACT

.    .    .    .    .

### "II.

"That the subject of the appeal and the matter to be resolved is the difference of opinion between the appellant [Mills] and the respondent [County Board] concerning . . . real property . . . consisting of farmland in Burleigh County, North Dakota, . . . and that the appellant and respondent also differ in opinion relative to the exempt status of the home located on said properties.

.    .    .    .    .

### "IV.

"That the subject property has been in the past and is presently used for hayland and woodland, having previously been also utilized for other farming purposes including stock raising and rural dwelling place. The subject property was used as a farm unit together with contiguous property consisting of 43.7 acres . . .

### "V.

"That the appellant lives and resides upon the subject property, utilizing the same as an agricultural residence, and that her major income was from farming operations and that she spends the major portion of her time on the agricultural land.

.    .    .    .

## "CONCLUSIONS OF LAW

.    .    .    .

### "III.

"That the property which is the subject of this appeal is agricultural farmland consisting of grazing land, hayland and native woodlands, . . .

### "IV.

"That the dwelling place of the appellant is located upon the farmland which is the subject of this appeal; that a major portion of the appellant's income is from agricultural and farming operations; and that the same qualifies for a farm dwelling exemption as defined by Section 57–02–08(15) of the North Dakota Century Code, as amended."

Section 57–02–08(15), N.D.C.C., provides that the following property is exempt from taxation:

"15. All farm structures, and improvements located on agricultural lands. This subsection shall be construed to exempt farm buildings and improvements only, and shall not be construed to exempt from taxation industrial plants, or structures of any kind not used or intended for use as a part of a farm plant, or as a farm residence. Any structure or structures used in connection with a retail or wholesale business other than farming, even though situated on agricultural land, shall not be exempt under this subsection. It is the intent of the legislative assembly that this exemption as applied to a residence shall be strictly construed and interpreted to exempt

only a residence which is situated on a farm and which is occupied or used by a person who is a farmer and that the exemption shall not be applied to property which is occupied or used by a person who is not a farmer; for this purpose the term 'farm' means a single tract or contiguous tracts of agricultural land containing a minimum of ten acres [4.05 hectares] and which normally provides a farmer, who is actually farming the land or engaged in the raising of livestock or other similar operations normally associated with farming and ranching, with not less than fifty percent of his annual net income; and the term 'farmer' means an individual who normally devotes the major portion of his time to the activities of producing products of the soil, poultry, livestock, or dairy farming in such products' unmanufactured state and who normally receives not less than fifty percent of his annual net income from any one or more of the foregoing activities; and the term also includes an individual who is retired because of illness or age and who at the time of retirement owned and occupied as a farmer as defined above the residence in which he lives and for which the exemption is claimed."

Mills argues that the Tax Appeals Board found the land to be agricultural farmland; that she lived and resided on the property using the home as an agricultural residence; that the major portion of her time was spent on the agricultural land; and that the major portion of her income was from farming. She therefore urges us to determine that the findings of the Tax Appeals Board support its conclusions that the owner meets the definitional requirements of a farmer. Mills and the County Board argued in detail the source of Mills' income. Mills contends that more than 50 percent of her income is from farming, that the home is conducive to farming, and that the majority of her income-producing time is spent farming. Several of these matters involve intriguing questions, such as:

(1) Is the land on which the home is situated agricultural land?[6]

(2) Does the production of hay and the growing and selling of firewood constitute farming?[7]

■ Regardless of how interesting these other issues may be, we deem it necessary to consider only one issue: Is Mills a farmer? Conceding for the purposes of this opinion, but without so deciding, that the land upon which the home is located is agricultural and that it is a farm, we determine that the conclusions of the Tax Appeals Board that Mills is a farmer are not supported by its findings of fact.

Before examining the specific findings which lead to our determination, we emphasize that Section 57–02–08(15), N.D.C.C., as it now exists, specifically provides that it is the intent of the Legislative Assembly that the exemption as applied to a residence is to be strictly construed and interpreted to exempt only a residence which is situated on a farm "and which is occupied or used by a person who is a farmer and that the exemption shall not be applied to property which is occupied or used by a person who is not a

---

6. In *Butts Feed Lots v. Board of Cty. Commissioners*, 261 N.W.2d 667, 671 (N.D.1977), this court noted that the definition of the term "farm" contained in Section 57–02–08(15) "is largely intended to exclude hobby farms and rural residences from the exemption."

7. The trial court, relying upon *Stahl v. Patrick*, 206 Minn. 413, 288 N.W. 854 (1939), concluded that the firewood Mills "harvests" is not an agricultural product. The trial court distinguished the holdings of this court in *Fredrickson v. Burleigh County*, 139 N.W.2d 250 (N.D. 1965), and *Boehm v. Burleigh County*, 130 N.W.2d 170 (N.D.1964). The provisions of Section 57–02–08(15) which were construed by this court in *Fredrickson* and *Boehm* were less explicit than the provisions now under construction. With respect to the issue of whether or not buildings or improvements are "farm structures" or "improvements" within the meaning of Section 57–02–08(15), N.D.C.C., see *Butts Feed Lots v. Board of Cty. Commissioners, supra* (fn. 6).

farmer." A "farmer" is defined by the provision as meaning an individual "who normally devotes the major portion of his time to the activities of producing products of the soil, poultry, livestock, or dairy farming . . . and who normally receives not less than fifty percent of his annual net income from any one or more of the foregoing activities; . . ."

The finding of the Tax Appeals Board pertinent to this issue is simply that Mills "lives and resides upon the subject property, utilizing the same as an agricultural residence, . . . and that she spends the major portion of her time on the agricultural land." It is apparent that one who lives and resides on the land and spends the major portion of his or her time on the agricultural land is not automatically a "farmer" by operation of law under the definition in Section 57–02–08(15). That definition requires that in order to be considered a farmer the individual must devote the major portion of his or her time to the activities of "producing products of the soil, poultry, livestock, or dairy farming . . ." Therefore, the conclusions of the Tax Appeals Board that the home qualifies as a farm dwelling under the exemption statute are not supported by the Board's findings of fact and, as a result, its conclusions in this regard are contrary to law.

Mills, in her brief and oral argument to this court, outlines in some detail her activities. Although few of those activities are devoted to "producing products of the soil, . . ." she argues that the majority of her income-producing activities are devoted to this purpose. The Tax Appeals Board, as we have already noted, made no specific findings concerning these matters. However, much of what Mills argues is contained in the transcript of her testimony at the hearing before that board. A review of that testimony indicates, in summary, that in addition to the acres upon which her home is located and the adjacent land she has a one-sixth interest in a ranch in Grant County, North Dakota, that is operated on shares and which, according to her testimony, "sort of runs itself"; that in addition to the sale of wood from the property there were, in 1969, sheep on the property; that at one time there was some hayland, the hay from which was used to feed cattle which were disposed of in 1976; that one year some of the hay was sold; and that in 1978 one acre of potatoes was planted but they didn't grow very well. Mills also testified that her activities involving the agricultural pursuits are concerned primarily with supervising the persons who cut the firewood on a share basis and supervising the persons employed to clear brush from the land. Mills testified that these activities consumed most of her income-producing time although the major portion of her total time was devoted to housekeeping activities, travel, and speaking engagements for her church.

Although there were no findings on these specific issues by the Tax Appeals Board, we accept them as fact. They do not, however, cause us to determine that Mills is a "farmer" within the meaning of the definition in Section 57–02–08(15), N.D. C.C. The rule is well settled in this State that the claimant of a tax exemption must establish the exempt status of his property and the tax-exemption statute involved will receive a strict construction against the claimant. We have also recognized that words describing the object of a tax exemption will be given a liberal and not a harsh or strained construction to obtain a reasonable result effectuating the legislative intent in providing a tax exemption. See, e. g., *United Power Assn. v. Board of Cty. Comrs.*, 300 N.W.2d 36 (N.D.1980).

Bearing in mind the requirement of Section 57–02–08(15), N.D.C.C., that the exemption as applied to a residence is to be strictly construed and interpreted to exempt only a residence which is used and occupied by a farmer and is not to be applied to property which is occupied or used by a person who is not a farmer, we cannot conclude that under these facts Mills has met the burden of establishing that she is a farmer. To conclude that under these facts Mills is a farmer would, we believe, result in a strained construction of the definition

of "farmer" contained in Section 57–02–08(15), N.D.C.C. Our affirming a tax exemption for Mills' residence on the basis she is a "farmer" within the meaning of the statutory definition would not be a reasonable result in light of the legislative intent expressed in that statute.

The judgment of the district court reversing the decision of the Tax Appeals Board is affirmed.

ERICKSTAD, C. J., SAND, and PEDERSON, JJ., and NEWMANN, District Judge, concur.

NEUMANN, District Judge, sitting in place of PAULSON, J., disqualified.

PEDERSON, Justice, concurring specially.

I agree with all that is said by Justice Vande Walle in the majority opinion but deem it advisable to point out that no inference should arise from our failure in this case to address the constitutionality of the farm structure tax exemption. There are some unanswered questions—if we give the words in § 57–02–08(15), NDCC, their ordinary meaning, the statute may operate unconstitutionally. We have heard no argument from the parties in this case on the matter and, until successfully challenged, all statutes are entitled to a presumption of constitutionality. In any event, if possible, we would construe those words so that the statute would operate constitutionally. See *State v. Wallace*, 48 N.D. 803, 187 N.W. 728 (1922), and *State v. Howe*, 247 N.W.2d 647 (N.D.1976).