MINOT FARMERS ELEVATOR, a
North Dakota corporation,
Appellee,

v.

Kent CONRAD, North Dakota State
Tax Commissioner, Appellant.

Civ. No. 11105.

Supreme Court of North Dakota.

April 23, 1986.

Kenner Law Firm, Minot, for appellee;
argued by Harris P. Kenner.

Robert W. Wirtz and Carla J. Smith, Asst. Attys. Gen., Bismarck, for appellant; argued by Carla J. Smith.

ERICKSTAD, Chief Justice.

The State Tax Commissioner appeals from the judgment of the district court which concluded that Minot Farmers Elevator was not liable for a use tax which had been assessed against a trackmobile owned and operated by Minot Farmers. We affirm.

Minot Farmers operates grain elevators at Minot, Deering, and Norwich, North Dakota. Minot Farmers loads its grain by unit trains and ships it to various out-of-state locations.

In June of 1982, Minot Farmers purchased a trackmobile which was delivered to Norwich, North Dakota, on December 6, 1982. The trackmobile purchased by Minot Farmers was described as "a locomotive-type vehicle which is equipped with both railroad wheels and road wheels and may be operated either on railroad tracks or on the ground." This trackmobile has a maximum tractive effort of 40,000 pounds. It has a maximum speed of 12.2 miles per hour with its rail wheels and a maximum speed of 7.2 miles per hour with its road wheels. Minot Farmers submitted affidavits which indicated that the sole use of this trackmobile is that of "moving and loading railroad grain cars for loading out the 26–unit grain train for shipment to points outside the state of North Dakota in interstate commerce." Minot Farmers ships no grain by rail to any point within North Dakota. The trackmobile is used solely on railroad trackage at Norwich, North Dakota, and when it is not used it is parked to the side.

In January and February of 1984, the State Tax Commissioner conducted an audit of the books and records of Minot Farmers. Pursuant to this audit a notice of determination was served on Minot Farmers assessing additional sales and use tax for the period 1981 through 1983. Minot Farmers protested the notice of determination. The only issue still in dispute from the audit is the taxation of the trackmobile. It is agreed that the trackmobile has a taxable value of $72,800.

Following an administrative hearing, the Tax Commissioner concluded that Minot Farmers was liable for the use tax which had been assessed against the trackmobile. Minot Farmers requested a rehearing which was denied by the Tax Commissioner. Minot Farmers then appealed to the district court from the decision of the State Tax Commissioner upholding the assessment of the use tax and from the denial of the petition for rehearing. The district court reversed the decision of the Tax Commissioner concluding that it was not in accordance with the law and that the Commissioner's findings were not supported by a preponderance of evidence. The Tax Commissioner has appealed from this judgment of the district court.

The ultimate issue on appeal, which was also the ultimate issue before the district court and before the Tax Commissioner, is whether or not the use tax assessed against the trackmobile pursuant to Chapter 57–40.2, N.D.C.C., was proper.

Our review of an administrative agency decision is a limited one and usually involves a three-step process whereby we determine whether or not the findings of fact are supported by a preponderance of the evidence, the conclusions of law are sustained by the findings of fact, and the decision is supported by the conclusions of law. *Sonterre v. Job Service North Dakota,* 379 N.W.2d 281, 283 (N.D.1985); *Grant Farmers Mut. v. State By Conrad,* 347 N.W.2d 324, 326 (N.D.1984). In an appeal from a decision of an administrative hearing which has been appealed first to the district court and then to this Court, we review the decision of the administrative agency and not the decision of the district court. *Sonterre,* 379 N.W.2d at 283; *Schadler v. Job Service North Dakota,* 361 N.W.2d 254, 256 (N.D.1985). Accordingly, in our review, we look to the record compiled by the administrative agency rather than to the findings of the district court. *Sonterre,* 379 N.W.2d at 283; *Grant*

*Farmers Mut.,* 347 N.W.2d at 327. When reviewing the record before the administrative agency, we do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could have reasonably determined that the factual conclusions were supported by the weight of the evidence. *Sonterre, id.; Grant Farmers Mut., id.; Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214, 220 (N.D.1979). On the other hand, decisions of administrative agencies on questions of law are fully reviewable by our Court. *Grant Farmers Mut., id.*

■ The Tax Commissioner's primary argument is that the trackmobile is subject to the North Dakota use tax because a taxable moment occurred between the time when the taxpayer took possession of the trackmobile and the time when the taxpayer first used the trackmobile to load grain cars. Minot Farmers argues that the taxable moment concept has no application because "[t]he Taxpayer in this case has not argued that the State lacks power or jurisdiction to apply the use tax to it because of interference with interstate commerce but rather Taxpayer points out that it relies solely on the exemption as granted under North Dakota statute § 57–40.2–04 subsection 5." We agree with Minot Farmers. The taxable moment concept establishes the right of the state to apply the use tax to property which comes to rest within its jurisdiction. The question in this case is whether or not the state statute exempts this trackmobile from the state tax, not whether or not the state could tax it if it were not exempted by state law.

■ While we have concluded that the taxable moment concept is not applicable in this case, we do understand the connection between it and the Tax Commissioner's interpretation of the exemption provided in Section 57–40.2–04(5), N.D.C.C. Throughout the proceedings, Minot Farmers has argued that the trackmobile is not subject to the use tax because of the exemption provided by Section 57–40.2–04(5) which exempts from the use tax:

"Railway cars and locomotives used in interstate commerce, and tangible personal property which becomes a component part thereof."

The Tax Commissioner argues that this exemption should be read to provide only the same exemption as is provided under the commerce clause of the United States Constitution. If this were so, then the taxable moment theory would be applicable. However, we are not convinced that this is the proper interpretation of this statute.

The Tax Commissioner further argues that the purpose of this statute is merely to put people on notice that such an exemption exists under the United States Constitution and that such provisions are not uncommon. To support his position, the Tax Commissioner refers us to Section 57–39.2–04(1), N.D.C.C., which reads:

"*Exemptions.* There are specifically exempted from the provisions of this chapter and from computation of the amount of tax imposed by it the following:

1. Gross receipts from sales of tangible personal property which this state is prohibited from taxing *under the constitution or laws of the United States or under the Constitution of North Dakota.*" [Emphasis added.]

Instead of supporting the Tax Commissioner, this example works against the Commissioner. Had the legislature intended the use tax exemption provided by 57–40.2–04(5) to be merely a restatement of the Constitution, it could have done so by using clear words referring to the Constitution as was done in 57–39.2–04(1). The absence of such wording indicates instead that the legislature did not intend this exemption to be merely a restatement of the exemption provided by the commerce clause of the United States Constitution. This is supported by the fact that both these tax exemptions were enacted by the legislature at the same time. *See* 1967 N.D.Sess.Laws ch. 459, § 4 and § 29.

■ The Tax Commissioner argues that even if we were to disagree with him and

hold that the state statute is not merely a restatement of the prohibition against interference with interstate commerce, to qualify for this exemption the trackmobile would have had to have been exempt at the moment Minot Farmers took possession of the trackmobile in North Dakota. Again the Tax Commissioner appears to be urging the application of the taxable moment concept. We believe this is a hyper-technical definition of the taxable moment concept, and would defeat the apparent purpose of this legislation. A tax exemption "is a special freedom from taxation" and "implies that no tax is payable." *William Clairmont, Inc. v. State*, 261 N.W.2d 780, 784 (N.D.1977). Accordingly, we conclude that the taxable moment concept has no application to this exemption.

We now reach the ultimate issue which is dispositive of this case, that is whether or not the trackmobile is exempt from the North Dakota use tax pursuant to Section 57–40.2–04(5).

One claiming a tax exemption has the burden of establishing exempt status, and a tax exemption statute will receive a strict construction against the claimant. *Grant Farmers Mut.*, 347 N.W.2d at 327; *Mills v. Board of County Com'rs*, 305 N.W.2d 832, 836 (N.D.1981). However, words describing the object of a tax exemption will be given a liberal and not a harsh or strained construction in order to obtain a reasonable result effectuating the legislative intent in providing a tax exemption. *Grant Farmers Mut., id.; Mills*, 305 N.W.2d at 836; *Lutheran Camp. Coun. v. Board of Co. Com'rs, Ward Co.*, 174 N.W.2d 362, 366 (N.D.1970). While the legislative intent must first be sought from the language of the statute, if a tax statute is ambiguous so that the legislative intention with respect to the meaning of the statute is doubtful, the doubt must be resolved in favor of the taxpayer. *Ladish Malting Co. v. Stutsman County, etc.*, 351 N.W.2d 712, 718 (N.D.1984); *Geo Resources, Inc. v. Tax Commissioner*, 288 N.W.2d 54, 55 (N.D. 1980).

■■■ In determining whether the trackmobile is exempt from the use tax pursuant to 57–40.2–04(5), we must first decide whether or not the trackmobile is a locomotive within the meaning of the statute. The statute does not indicate whether a narrow or a broad construction of the word locomotive was intended. It is also not easily discernible whether or not the legislature intended a trackmobile-type vehicle to be considered a locomotive under this exemption. Our rules of construction, as stated above, indicate that under such circumstances we should give a liberal and not a harsh or strained construction to words describing the object of a tax exemption, and that doubt in the meaning of a statute should be resolved in favor of the taxpayer. Applying these rules of construction, we conclude that a trackmobile is a locomotive for the purposes of this exemption. We recognize that some courts have given a more narrow definition to the word locomotive. *See, Co-op. Leg. Com. of Trans. Broth. v. Public Util. Comm.*, 177 Ohio St. 101, 202 N.E.2d 699 (1964); *Gordon v. Tennessee Cent. Ry. Co.*, 167 Tenn. 302, 69 S.W.2d 611 (1934). Those cases, however, involve the interpretation of a penal statute and thus a narrow or strict definition of the word was more appropriate.[1]

---

**1.** Other courts, when reviewing statutes that are penal in nature, have given a broader definition to the word locomotive. *See Duchsherer v. Northern Pacific Ry. Co.*, 4 Wash.App. 291, 481 P.2d 929 (1971) ("A–3 motorcar," a self-propelled, one-ton vehicle designed to carry people and to pull loads of material when coupled with pushcars was a "locomotive" within statute pertaining to inspection of locomotives.); *Baltimore and Ohio Ry. Co. v. Jackson*, 353 U.S. 325, 77 S.Ct. 842, 1 L.Ed.2d 862 (1957) (When railroad is putting motor track car to locomotive uses, Safety Appliance Act must be obeyed regardless of label placed on the vehicles.); *United States v. Fort Worth & Denver City Ry. Co.*, 21 F.Supp. 916 (N.D.Tex.1937) (A locomotive crane used for the purposes for which a locomotive is used is a locomotive under the statute.); *Hoffman v. New York, N.H. & H.R. Co.*, 74 F.2d 227 (2nd Cir.1934) (Gasoline engine or tractor used in yards for switching and frequently hauling long line of cars is a "locomotive" within Boiler Inspection Act.).

■ Next, it must be determined whether or not the trackmobile was used in interstate commerce. The same rules of construction which apply to the word locomotive above, also apply to the words "used in interstate commerce." While the trackmobile itself does not travel outside the state of North Dakota, its use is directed exclusively toward interstate commercial activity. The evidence submitted to the Tax Commissioner indicates that Minot Farmers sole use of the trackmobile was for the purpose of moving railroad cars in order to make up 26-car trainload units for grain shipments in interstate commerce. We believe this activity constitutes adequate "use in interstate commerce" necessary to satisfy the exemption provided by 57–40.2–04(5).[2]

For the reasons stated above, we believe the district court was correct in concluding that the trackmobile is a locomotive and has been used exclusively in interstate commerce and thus is exempt from the use tax imposed by Chapter 57–40.2, N.D.C.C.[3] We believe the Tax Commissioner construed the words of the statute too strictly when reaching the opposite conclusion.

■ Minot Farmers has asked that it be awarded attorneys' fees and costs pursuant to Section 28–32–21.1(1), N.D.C.C., which reads as follows:

"In any civil judicial proceeding involving as adverse parties an administrative agency and a party not an administrative agency or agent of an administrative agency, the court must award the party not an administrative agency reasonable attorneys' fees and costs if the court finds in favor of that party and determines that the administrative agency acted without substantial justification."

We recognize the hardship placed upon the taxpayer and upon the taxpayer's attorney when an appeal is taken when the tax assessment in question involves a relatively small amount. However, under the facts of this case, we do not believe the Tax Commissioner acted "without substantial justification." The interpretation of 57–40.2–04(5) suggested by the Tax Commissioner, while not persuasive, was still reasonable. Accordingly, only the usual statutory costs on appeal allowable to the appellee when the judgment is affirmed are awarded Minot Farmers Elevator.

We affirm the judgment of the district court.

VANDE WALLE, LEVINE, GIERKE and MESCHKE, JJ., concur.

MESCHKE, Justice, concurring.

I concur fully in the thoughtful opinion by Chief Justice Erickstad. I write separately only to observe that I am not overwhelmed by the reasonableness of the Tax Commissioner's position in this case. The factual record here rather clearly demonstrated that the trackmobile was a "locomotive used in interstate commerce."

By attempting to create a constitutional issue (by invoking the "taxable moment" doctrine peculiar to taxation in interstate commerce) where no constitutional issue existed in a straightforward matter of statutory interpretation, it seems to me at least questionable whether the Tax Commissioner acted with substantial justification. But, our North Dakota version of the "Equal Access to Justice" Act (See 5 U.S.C.A. Section 504, 15 U.S.C.A. Section 634(b), 28 U.S.C.A. Section 2412, and 42 U.S.C.A. Section 1988; Equal Access to Justice Act) is relatively new (S.L.1985, Ch. 357, Section 1, effective July 1, 1985), and would only apply to the appeal from the judgment of the district court, which was entered on September 10, 1985. This was barely two months past the effective date of this new statute which requires that an

---

2. As we have already concluded that the trackmobile is exempt from the use tax pursuant to 57–40.2–04(5), we need not decide whether or not collecting a use tax on the trackmobile would be invalid under the commerce clause of the United States Constitution.

3. By so holding we are not implying that the locomotive be used *exclusively* in interstate commerce to be exempt under Chapter 57–40.2, N.D.C.C.

award of attorneys fees and costs *must* be made against an administrative agency which loses any civil judicial proceeding where the court "determines that the administrative agency acted without substantial justification." Therefore, I resolve my doubts, about whether the Tax Commissioner acted without substantial justification in seeking the strained interpretation of the exemption section at stake here, in favor of the agency in this instance.